UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH BASSOLINO, individually and on behalf of all others similarly situated,

    Plaintiff,

- against -

WHOLE FOODS MARKET GROUP, INC.,

    Defendant.

Case No. 1:15-cv-06046-PAE

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

---

**GREENBERG TRAURIG, LLP**
David E. Sellinger (DS8805)
Gregory J. Casas (admitted *pro hac vice*)
Theodore J. McEvoy (TM8180)

MetLife Building
200 Park Avenue
New York, New York 10166
(973) 360-7900
(973) 301-8410 (fax)
*Attorneys for Defendant,*
*Whole Foods Market Group, Inc.*

## **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A.  Procedural History ..........................................................................................................2

    B.  Allegations of the Complaint.........................................................................................3

    C.  Whole Foods' Sales Data For New York State During The Alleged Class Period ..............4

ARGUMENT................................................................................................................................6

    A.  CAFA's Jurisdictional Requirements Are Met In This Case...............................................6

    B.  The Jurisdictional Amount Is Satisfied Based On Plaintiff's Allegations..........................7

    C.  The Court May Look Outside the Pleadings to Determine Whether the Amount in Controversy is Satisfied ...................................................................................................8

    D.  There is More than a "Resonable Probability" that the Jurisdictional Amount is Satisfied..........................................................................................................................9

    E.  Plaintiff's Request For Attorneys' Fees Should Be Denied ...............................................13

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*,
  592 F. Supp. 2d 522 (S.D.N.Y. 2008) .................................................................................... 9

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006) ................................................................................................. 6, 7

*Ebin v. Kangadis Food Inc.*,
  No. 13-2311 2013 WL 3936193 (S.D.N.Y. July 26, 2013) ..................................................... 9

*Fields v. Sony Corp. of Am.*,
  No. 13 CIV. 6520 GBD, 2014 WL 3877431 (S.D.N.Y. Aug. 4, 2014) ..................................... 8

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
  967 F. Supp. 2d 955 (S.D.N.Y. 2014) (Engelmayer, J.) ...................................................... 6, 9

*Henry v. Warner Music Grp. Corp.*,
  No. 13 CIV. 5031 PGG, 2014 WL 1224575 (S.D.N.Y. Mar. 24, 2014) ................................... 9

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) ............................................................................................................ 13

*Mehlenbacher v. Akzo Nobel Salt, Inc.*,
  216 F.3d 291 (2d Cir. 2000) ........................................................................................ 6, 7, 8

*Pollock v. Trustmark Ins. Co.*,
  367 F.Supp.2d 293 (E.D.N.Y. 2005) ................................................................................... 12

*Rates Tech. Inc. v. Speakeasy, Inc.*,
  685 F.3d 163 (2d Cir. 2012) .................................................................................................. 2

*Smith v. Manhattan Club Timeshare Ass'n*,
  944 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................................................ 8, 9

*Sorrentino v. ASN Roosevelt Ctr., LLC*,
  588 F. Supp. 2d 350 (E.D.N.Y. 2008) .................................................................................. 10

*In re Standard & Poor's Rating Agency Litig.*,
  23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014) ............................................................................ 13

*United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties
  Meriden Square, Inc.*,
  30 F.3d 298 (2d Cir.1994) ..................................................................................................... 7

*Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.,*
  588 F. Supp. 2d 329 (E.D.N.Y. 2008) ...............................................................................12, 13

*Zacharia v. Harbor Island Spa, Inc.,*
  684 F.2d 199 (2d Cir. 1982)..................................................................................................8

**Statutes**

28 U.S.C. § 1332(d)(2), (5)(b), (6) .................................................................................................6

28 U.S.C. § 1332(d)(2), (6)............................................................................................................6

28 U.S.C. § 1332(d)(6) ..................................................................................................................7

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ......................................................1, 2, 6

## PRELIMINARY STATEMENT

Defendant Whole Foods Market Group, Inc. ("Whole Foods") respectfully submits this memorandum in opposition to the motion of Plaintiff Joseph Bassolino to remand this action to state court. Whole Foods properly removed this putative class action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and Plaintiff's motion is meritless and should be denied.

Plaintiff has filed this action on his own behalf and on behalf of a putative class consisting of all purchasers of "merchandise from Whole Foods's stores located in the State of New York within the previous three (3) years." Complaint ("Compl.") ¶ 6. He alleges that Whole Foods engaged in a practice of overcharging customers for groceries, placing incorrect weights on the labels of various unidentified pre-packaged foods, and overcharging its customers for those products based on the incorrect weights.

Plaintiff has pled his Complaint in the broadest possible terms, referring to purchasers of "merchandise" and "pre-packaged products – including meats, dairy and baked goods" – without any effort to limit that universe in any way, Compl., ¶¶ 6, 8(b), and a practice that he alleges was "systematic[]". *Id.*, ¶ 16. The sole source of Plaintiff's information regarding the alleged mislabeling and overcharges, based on the recitations of the Complaint, is a June 2015 press release issued by the New York City Department of Consumer Affairs (the "DCA"), in connection with a well-publicized ongoing weights and measures investigation involving various food products at certain New York City Whole Foods stores. Compl. ¶ 16.

Whole Foods categorically denies that Plaintiff can maintain a claim, either on his own behalf or on behalf of any putative class, and that he is entitled to recover any amount in damages. Nonetheless, his Complaint, which contains allegations regarding a wide array of groceries and pre-packaged products sold at every Whole Foods store in New York State for a

1

three-year period, unquestionably places well over $5 million "in controversy," as required for CAFA jurisdiction.

As demonstrated by the accompanying Affidavit of Jeffrey Moll ("Moll Aff."), taking Plaintiff's broad allegations regarding mislabeling, and applying them to sales of even a fraction of the relevant products during the putative class period defined in the Complaint, demonstrates that Plaintiff has easily exceeded the $5 million threshold, even under the most conservative reading of Plaintiff's allegations.

## STATEMENT OF FACTS

### A. Procedural History

Plaintiff originally filed his Complaint in the New York Supreme Court for Bronx County, on June 25, 2015. On July 31, 2015, Whole Foods filed a timely Notice of Removal of the action to this Court (Docket Item 1). On August 21, 2015, this case was re-assigned from the Honorable Paul G. Gardephe to this Court based on this case's being related to a similar action filed in this district on July 24, 2015 and previously assigned to this Court, captioned *John v. Whole Foods Market, Inc.*, No. 1:15-cv-05838-PAE. Like this action, *John* is a putative class action asserting essentially the same claims, which was also filed in the immediate wake of the DCA announcement of its investigation, using that announcement as the basis for its claims.[1]

---

[1] Notably, the Plaintiff in *John* affirmatively pleads that over $5 million is in controversy, even though the putative class he seeks to certify is limited to Whole Foods stores located in New York City, rather than the entire State. Specifically, the Complaint in *John* alleges that "[t]his court has jurisdiction over all causes of action asserted herein, pursuant to 28 U.S.C. § 1332(d), because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed Class members and Defendant." *John*, No. 1:15-cv-05838-PAE, Docket Item 1 (Complaint), ¶ 7. A district court can take judicial notice of the contents of a document filed in another judicial proceeding. *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012).

2

### B. Allegations of the Complaint

Plaintiff brings suit both individually and on behalf of "all others similarly situated who purchased merchandise from Whole Foods's stores located in the State of New York within the previous three (3) years" (*i.e.*, since June 25, 2012). Compl. ¶ 6. Plaintiff makes only a single, conclusory allegation that he has "purchased numerous mispriced packaged food" at a Whole Foods store located in Manhattan "within the last three . . . years." *Id.* ¶ 4.

While Plaintiff conspicuously fails to identify any specific product purchased by either him or any member of the putative class that he seeks to certify, he alleges that common questions of fact and law applicable to the putative class include whether Whole Foods overstated weights of its "pre-packaged products including meats, dairy and baked goods," "[b]reached its contract with Whole Food customers [sic] that purchased pre-packaged products - including meats, dairy and baked goods," and "overcharg[ed] customers for pre-packaged foods." Compl. ¶ 8.[2] The complaint alleges no limitation whatsoever on the broad references to "pre-packaged products including meats, dairy and baked goods," "overcharging customers on its groceries sold," and, as indicated above, alleges that the overcharging was "systematic[]". Compl., ¶¶ 16, 25. Based on these generalized allegations, and the alleged statements in the DCA press release, the Complaint asserts claims for violation of Sections 349 and 350 of the New York General Business Law, and section 63(12) of the New York Executive Law, unjust enrichment, and breach of contract.

---

[2] Plaintiff also alleges that Whole Foods charged its New York customers tax on certain non-taxable items. Complaint ¶ 19. This allegation is similarly lacking in factual support, like the allegations concerning the weights on the labels of pre-packaged foods, and Plaintiff does not allege that he actually purchased a specific, non-taxable product for which he was improperly charged a tax. *Id.* ¶ 19.

3

The Complaint does not include a demand for a specific amount of damages. Plaintiff, however, alleges that he and the members of the putative class are entitled to recover damages, including compensatory damages, based on the alleged overcharges (Compl. ¶¶ 28, 33, 37, 40), as well as "reasonable attorneys' fees" in connection with the action. Compl. at 8. Plaintiff's memorandum in support of his motion to remand (Document 14-1) ("Pltf. Br.") concedes that there are more than 100 members in his putative class. Pltf. Br. at 4. Plaintiff also does not dispute that the minimal diversity required by CAFA is present. The Complaint refers to (and largely relies upon) a public statement by the DCA, in which, according to the Complaint, the DCA reported findings of mislabeled product weights in Whole Foods stores in New York City. Compl. ¶¶ 16-19. Plaintiff alleges that, "[a]ccording to such investigation, the amount overcharged to customers ranged from $.80 to $14.84 per package sold." Compl. ¶ 18.

C. **Whole Foods' Sales Data For New York State During The Alleged Class Period.**

Whole Foods' sales records for all of its stores in New York State during the putative class period (*i.e.*, from June 25, 2012 to June 25, 2015) show more than 16.5 million unit sales of meat, dairy (including cheese) and baked goods – the specific categories of foods that Plaintiff discusses in his class allegations. These products accounted for $117,722,888.01 in total dollar sales. Moll Aff. ¶¶ 9-10 and Ex. A; Compl., ¶ 8(b) and (c). Importantly, these sales data relate to only a fraction of Whole Foods' total sales of meat, dairy (including cheese) and baked goods.

As explained in the Moll Affidavit, Whole Foods' jurisdictional-amount analysis began with a review of the specific products identified by the DCA in its investigation, and then limited that data to the categories of meat, dairy and baked goods products. *Id.*, ¶¶ 4-7. In other words, the sales data being provided by Whole Foods for this determination refer to the specific products put at issue by the Complaint.

4

Whole Foods generates and maintains records regarding aggregate sales of products by total units sold and total dollar amounts of sales. A product "unit" may refer to a single package or to a unit of measurement such as product weight (one pound, for example), depending on the product. Whole Foods does not maintain data showing the number of individual packages sold where the product unit is measured by weight (such as, for example, ground beef). Moll Aff. ¶ 8. The net sales information provided herein includes products that were sold by package and by weight, depending on the way that Whole Foods measures a "unit" of a particular product. Accordingly, the net sales information available at the present time, while reflective of the magnitude of the number of packages sold, does not show sales by number of packages.

For purposes of this jurisdictional analysis only,[3] assuming alleged overcharges were calculated based on total units sold, by way of illustration, then applying the lowest amount per unit that Plaintiff alleges was overcharged ($0.80) to the total unit sales of those products (16,577,661.99 units) yields an amount in excess of $13 million. In fact, Whole Foods' records show sales of over 11 million units of cheese alone. *Id.*, Ex. A. Applying the alleged $0.80 overcharge amount solely to those cheese sales, and using unit sales as the basis for the calculation, for purposes of illustration of the magnitude of alleged overcharges at issue based on the allegations of the Complaint, yields a figure of over $9 million. Whole Foods recognizes that "unit" sales do not correlate to the number of packages sold. Whole Foods respectfully submits, however, that the magnitude of such sales indicates that the alleged overcharges clearly total in excess of $5 million.

---

[3]   Whole Foods does not concede the accuracy of any of Plaintiff's allegations for purposes of class certification, liability, damages, or any other purpose, and specifically reserves all of its rights with respect thereto.

Alternatively, Whole Foods' transaction data also shows there were over 75 million individual purchase transactions at New York State Whole Foods stores during the period June 25, 2012 to June 25, 2015. Moll Aff. ¶ 14. Each of these transactions by definition involved at least a single product of "merchandise". For purposes of jurisdictional analysis only, since Plaintiff seeks to represent a putative class of all purchasers of "merchandise" (without limitation) from Whole Foods' New York stores, *see* Compl., ¶6, applying Plaintiff's alleged $0.80 per-unit overcharge to each purchase transaction (75 million units X 0.8 = $60 million) yields in excess of $5 million. Indeed, that is true even if only 10% of those transactions ($60 million X 10% = $6 million) involved the purchase of a prepackaged weighed product.

## ARGUMENT

### A. CAFA's Jurisdictional Requirements Are Met In This Case.

CAFA amended the diversity statute by adding 28 U.S.C. § 1332(d), which confers original federal subject matter jurisdiction over any putative class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5 million, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff (or putative class member) and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2), (5)(b), (6). *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).

Where a case is removed from state court by the defendant, the defendant bears the burden of establishing federal subject matter jurisdiction and must show that it appears to a "reasonable probability" that the aggregate claims of the plaintiff class are in excess of $5 million. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); 28 U.S.C. § 1332(d)(2), (6); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). *See also Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 959 (S.D.N.Y. 2014) (Engelmayer, J.) (defendant must show "that it appears to a ***reasonable probability*** that the aggregate claims of

6

the plaintiff class are in excess of $5 million.") (emphasis in original) (*quoting Blockbuster, Inc.*, 472 F.3d at 58).

Plaintiff concedes that there are more than 100 members in his putative class, Pltf. Br. at 4, and does not dispute that the minimal diversity requirement has been met. In any event, as set forth in the Moll affidavit, there are over 16 million items of meats, dairy and baked goods products sold by Whole Foods stores in New York State, and over 75 million customer purchase transactions at those stores, Moll Aff., ¶13 and Exh. A, so there unquestionably are over 100 members of the putative class. Furthermore, as set forth in Whole Foods' Notice of Removal (D.E. 1), the required diversity of citizenship under CAFA is satisfied because Whole Foods is a Delaware corporation with its principal place of business in Texas, and Plaintiff is a New York citizen. Compl. ¶¶ 4-5. Accordingly, the only disputed issue on this motion for remand is the adequacy of the jurisdictional amount, and Whole Foods has demonstrated that there is far more than a "reasonable probability" that the aggregate claims exceed $5 million.

### B. The Jurisdictional Amount Is Satisfied Based On Plaintiff's Allegations.

CAFA explicitly provides for aggregation of each class member's claims in determining whether the amount of controversy is at least $5 million. 28 U.S.C. § 1332(d)(6). *Blockbuster*, 472 F.3d at 59. When a complaint fails to allege a specific damages amount, and facts relating to the jurisdictional amount are challenged by the plaintiff, the defendant must establish the requisite amount in controversy "with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir.1994) (alteration in original) (*quoting McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). In determining whether the removing defendant has met this burden, courts "look first to the plaintiffs' complaint and then to [the defendant's] petition for removal." *Mehlenbacher*,

7

216 F.3d at 296 (*citing Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir.1957)).

Whole Foods is entitled to take Plaintiff's own allegations, as set forth in the Complaint (which apply to sales of "meats, dairy and baked goods" throughout New York State for a three-year period), as the starting point for a jurisdictional analysis. *See Mehlenbacher*, 216 F.3d at 296. In doing so, and applying Plaintiff's exceptionally broad claims to the relevant data regarding sales in order to determine the amount that Plaintiff's Complaint has placed in controversy, Whole Foods does not, as Plaintiff claims, somehow "inculpat[e]" itself with respect to any of Plaintiff's claims regarding any product, *see* Pltf. Br. at 9, or concede any liability at all. *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits."). Whole Foods vigorously denies Plaintiff's allegations. Courts regularly proceed with analysis of the jurisdictional amount where a complaint does not specify damages by applying a reasonable formula to the claims as alleged and the available data, and there is no presumption that such an analysis is in any way a concession as to the validity of such claims. *See, e.g., Smith v. Manhattan Club Timeshare Ass'n*, 944 F. Supp. 2d 244, 250-51 (S.D.N.Y. 2013) (finding amount in controversy satisfied where complaint did not contain specific damages demand and "aggregate value of claims" was not clear; denying plaintiff's motion to remand, and granting defendants' motions to dismiss).

### C. The Court May Look Outside the Pleadings to Determine Whether the Amount in Controversy is Satisfied.

"Where the pleadings themselves are inconclusive as to the amount in controversy ... courts may look outside those pleadings to other evidence in the record." *Smith v. Manhattan Club, supra*, 944 F. Supp. 2d at 250, *citing United Food*, 30 F.3d at 305. *See also Fields v. Sony*

8

*Corp. of Am.*, No. 13 CIV. 6520 GBD, 2014 WL 3877431, at *2-3 (S.D.N.Y. Aug. 4, 2014) (looking beyond allegations of complaint in calculating amount in controversy based on employment period, estimated hours per week, and pay for estimated number of class members in wage and hour case; adding 1/3 of total amount as attorneys' fees for purposes of reaching threshold); *Henry v. Warner Music Grp. Corp.*, No. 13 CIV. 5031 PGG, 2014 WL 1224575, at *3 (S.D.N.Y. Mar. 24, 2014) (considering evidence including declaration from Human Resources Specialist regarding wage and hour issues to establish jurisdictional amount); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 (S.D.N.Y. 2008) (considering affidavit submitted by defendant regarding amount in controversy). Plaintiff does not dispute that the Court may look outside the four corners of the Complaint and the Notice of Removal where they are inconclusive as to the potential amount in controversy. Pltf. Br. at 8. Applying these settled principles, the Court can look at Whole Foods' actual sales data, as supplied in the affidavit of Jeffrey Moll, regarding the products that Plaintiff has put at issue in his complaint.

### D. There is More than a "Reasonable Probability" that the Jurisdictional Amount is Satisfied.

Plaintiff correctly states that the Complaint does not make any specific damages demand. But a plaintiff cannot defeat a proper removal by simply omitting a specific amount of claimed damages, as that omission does not end the jurisdictional analysis. *See Smith v. Manhattan Club, supra*, 944 F. Supp. 2d at 250 (courts may look outside pleadings). Comparing the allegations of the Complaint with Whole Foods' sales records for the relevant period, even under the most conservative reading of Plaintiff's claims, demonstrates far more than a "reasonable probability" that the jurisdictional threshold is comfortably surpassed in this matter. *See Hart*, 967 F. Supp. 2d at 961 (applying multiple of alleged damages across class to find reasonable probability that

9

$5 million threshold was exceeded); *Ebin v. Kangadis Food Inc.*, No. 13-2311 2013 WL 3936193, at *4 (S.D.N.Y. July 26, 2013) (calculating amount in controversy by comparing alleged overcharge per fluid ounce for premium olive oil as stated in complaint with volume of sales as shown in document produced by defendant); *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 354 (E.D.N.Y. 2008) (calculating amount in controversy based on plaintiffs' claims for rent abatement multiplied by total rental units at issue).

Plaintiff's claim is that Whole Foods "[r]outinely overstated the weights of its pre-packaged products – including meats, dairy and baked goods." Compl., ¶ 8(b). Since the jurisdictional analysis must be grounded in the allegations of the Complaint, Whole Foods' sales data shows that there were over 16 million unit sales of pre-packaged products in the "meats, dairy and baked goods" categories in New York State during the three-year class period. Moll Aff. Exh. A. Plaintiff himself argues that one of the "jurisdictional facts relevant to the amount in controversy requirement as alleged in the Complaint" is that, "the amount overcharged to customers ranged from $0.80 to $14.84 per package sold." Pltf. Br. at 4; Compl. ¶ 18 (emphasis added). *See also* Pltf. Br. at 5 ("Evident from the DCA's findings, the range of possible damages per item purchased is sweeping – starting at $.80 and extending to $14.84") (emphasis added).

As explained above, Whole Foods does not maintain sales data showing the number of individual packages sold where the product unit is measured by weight. The aggregate sales data includes sales of products measured by package as well as sales of products measured by weight. This is the most complete data available in this immediate time frame. Whole Foods respectfully submits, however, that while the unit sales figure does not correlate to packages sold, it demonstrates the magnitude of sales for purposes of the jurisdictional analysis. Thus, applying the lowest alleged potential overcharge as claimed in the Complaint ($.80) to the total

number of units of relevant products sold during the period in question (over 16 million) yields a figure in excess of $13 million, with respect to demonstrating the magnitude of the potential alleged damages, which is well beyond the $5 million threshold.[4] In fact, applying Plaintiff's own minimum alleged overcharge to sales of cheese alone (over 11 million units) – which is only one type of product in the dairy category (*see* Compl., ¶ 8(b)) – using net unit sales as the basis for the illustration yields a figure of over $8 million.[5] Furthermore, the products considered in Whole Foods' analysis are only a fraction of the "meat, dairy and baked goods" products sold by Whole Foods. See Moll Aff. ¶12. Accordingly, under the settled case law, the $5 million threshold can be reached even without considering the full range of products Plaintiff has placed at issue, or his separate claim arising from alleged overpayments due to the imposition of tax on non-taxable items, the other claim that Plaintiff asserts without any factual averment.

A jurisdictional analysis based on individual transactions confirms that the amount placed in controversy by Plaintiff's allegations exceeds the statutory threshold. Whole Foods' data shows that there were over 75 million transactions at its stores in New York State during the alleged class period. Applying Plaintiff's alleged $.80 amount to that number yields in excess of $5 million, even if only 10% of those transactions involved the purchase of a prepackaged

---

[4] *See* Moll Aff. Exh. A. Whole Foods denies that Plaintiff was overcharged in any amount. However, for purposes of a jurisdictional analysis only, multiplying $.80 by the total unit sales number of 16,577,661.99 yields a total of $13,262,129.59, by way of illustration.

[5] *See* Moll Aff. Exh. A. 11,023,391.24 total unit sales of cheese during the relevant period multiplied by $.80 per unit yields a total of $8,818,712.99, by way of illustration.

weighed item. *See* Moll Aff. ¶ 14.[6] Whole Foods submits that the foregoing data certainly demonstrates a "reasonable probability" that the jurisdictional amount is satisfied.[7]

Moreover, this analysis of unit sale and transaction data does not include a reasonable allowance for attorneys' fees, which the Court may consider when calculating the potential amount in controversy. *See, e.g., Pollock v. Trustmark Ins. Co.*, 367 F.Supp.2d 293, 298 (E.D.N.Y. 2005). Plaintiff has asserted a claim pursuant to N.Y.G.BL. § 349, which provides that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff," N.Y.G.B.L. § 349(h), and therefore such fees could be considered in determining whether the jurisdictional amount has been met. *Pollock*, 367 F. Supp. 2d at 298 (attorneys' fees under § 349(h) may be considered in calculation of amount in controversy).

Plaintiff's argument that there is "no reliable method by which to calculate the quantity of persons that purchased overpriced pre-packaged foods" and thus "no way to determine to a reasonable probability that the amount in controversy exceeds $5 million" misses the point. *See* Pltf. Br. at 4. The Complaint alleges that customers were overcharged "per package sold", and that the minimum overcharge amount per package was $.80. Pltf. Br. at 4-5; Compl. ¶ 18. Therefore, the "quantity of persons" that purchased products is unnecessary for the damages analysis in this case. Indeed, using the per-unit sales data discussed above, there is no need to determine the number of class members in order to determine that the jurisdictional threshold has

---

[6]  Whole Foods denies that there was any systematic issue of overcharging at any of its stores. However, for purposes of a jurisdictional analysis only, multiplying $.80 by 75,768,569 transactions yields a total of $60,614,855.20. Ten percent of that total is $6,061,485.52.

[7]  However, if the Court is unsatisfied that the data presently available suffices to establish that the jurisdictional threshold is met, then Whole Foods requests an additional thirty days for further, more in-depth analysis of the sales data. In such event, Whole Foods will consent to appropriate discovery on the jurisdictional amount issue, if the Court deems necessary.

12

been met. However, the data on the number of transactions within New York State during the alleged class period confirms that the threshold has been met.

Plaintiff's discussion of *Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, 588 F. Supp. 2d 329 (E.D.N.Y. 2008), in which the plaintiffs sought rent abatements for a fixed number of apartments, is inapposite for the same reason, *i.e.*, because the amount placed in controversy by the Complaint in this case is based upon alleged overcharges per item, not by the number of class members. In any event, the *Ventimgilia* court found that "defendants have established a reasonable probability that $5 million is in controversy based upon the plaintiffs' other claims, even absent the abatement demand." *Id.* at 335.

Plaintiff's speculative "calculation" of the amount in controversy, which multiplies the minimum overcharge amount of $.80 by 100,000 potential class members, Pltf. Br. at 7, is similarly incorrect, because it contradicts the allegations of the Complaint, which relies upon alleged overcharges per unit, and contains no allegations as to the number of class members, or the number or identity of products purchased by Plaintiff (or any other putative class member). Finally, contrary to Plaintiff's assertion, which is unsupported by citation to any authority, Whole Foods does not "bear[] the additional burden of establishing the potential class size" in order to show a reasonable probability that the amount in controversy exceeds $5 million, *see* Pltf. Br. at 9, because analysis of Plaintiff's aggregate damages claim does not depend on the number of class members.

### E. **Plaintiff's Request For Attorneys' Fees Should Be Denied**

As discussed above, removal was proper under CAFA. However, even assuming arguendo that removal were improper, while a federal court remanding an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal," the court may do so "**only** where the removing party lacked an objectively

13

reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). A basis for removal is "objectively reasonable" if the removing party had a "colorable argument that removal was proper." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014).

Here, Whole Foods certainly has more than a "colorable argument" that removal was proper. Plaintiff does not dispute that the class size and minimal diversity requirements of CAFA are met here, and raises only meritless arguments to contest the amount in controversy. The removal was based on the allegations of the Plaintiff's complaint as Plaintiff has framed the case. Accordingly, the motion for remand should be denied, and no award of fees and costs is appropriate in this case.

## CONCLUSION

For all of the foregoing reasons, Whole Foods respectfully requests that the Court deny Plaintiff's motion to remand this matter, and deny Plaintiff's request for an award of costs and fees.

Dated: September 18, 2015

**GREENBERG TRAURIG, LLP**

By: *s/David E. Sellinger*

David E. Sellinger (DS8805)
Gregory Casas (admitted *pro hac vice*)
Theodore J. McEvoy (TM8180)
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone 212-801-9200
Facsimile 212-801-6400
sellingerd@gtlaw.com
mcevoyt@gtlaw.com

*Attorneys for Defendant*
*Whole Foods Market Group, Inc.*

14